IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AMTRUST INSURANCE COMPANY<br>OF KANSAS, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action Number: 2:12-cv-713-MHT<br>CV 2012- |
| ENGINEERED TEXTILE PRODUCTS,<br>INC., and SOUTHEASTERN CHEESE<br>CORPORATION, et al., | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the plaintiff, AmTrust Insurance Company of Kansas, Inc. ("AmTrust"), and respectfully submits its Complaint for Declaratory Judgment pursuant to Rule 57, *Federal Rule Civil Procedure* and 28 U.S.C. §2201 *et seq.* As grounds for its Complaint, AmTrust states as follows:

## PARTIES

1.     Plaintiff AmTrust Insurance Company of Kansas, Inc. ("AmTrust") is a corporation organized and existing under the laws of the State of Kansas with its principal place of business in the State of Kansas.

2.     Defendant, Engineered Textile Products, Inc., ("ETP") is an entity organized and existing under the laws of the State of Alabama with its principal place

of business in Mobile, Mobile County, Alabama.

3.     Defendant Southeastern Cheese Corporation ("Southeastern Cheese")
is an entity organized and existing under the laws of the State of Alabama with its
principal place of business in Uniontown, Perry County, Alabama.

## JURISDICTION

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §2201
and Rule 57, *Federal Rules Civil Procedure*, and other applicable law because an
actual controversy exists as to whether AmTrust owes a duty to defend and indemnify
ETP for claims asserted by Southeastern Cheese in a lawsuit styled *Southeastern
Cheese Corporation v. Engineered Textile Products, Inc.* bearing Civil Action
Number CV 2012-900028, pending in the Circuit Court of Perry County, Alabama.
(A copy of the Complaint is attached hereto as Exhibit "A").

5.     This Court has diversity jurisdiction over this matter under 28 U.S.C.
§1332 because the amount in controversy exceeds the sum of $75,000 and this
controversy is between citizens of different States.   Southeastern Cheese seeks
recovery of compensatory and punitive damages related to the failure of ETP's
product and work which "severally impaired the function of plaintiff's water
treatment system" as well as lost profits, lost sales and other damages.

2

## FACTS

6.      AmTrust issued a commercial general liability insurance policy bearing policy number KPP1004864201 to ETP with an effective policy period from February 8, 2010-February 8, 2011. (A certified copy of the AmTrust policy is attached hereto as Exhibit "B".)

7.      In addition to the commercial general liability insurance policy referenced above, AmTrust also issued to ETP a commercial liability umbrella policy bearing policy number KMB100486501 with an effective policy period from February 8, 2010 - February 8, 2011. (A certified copy of the AmTrust umbrella policy is attached hereto as Exhibit "C").

8.      ETP is a fabricator of industrial and environmental fabric products, including components to be used in wastewater treatment systems.

9.      Southeastern Cheese manufactures cheese through a multi-step process that produces organic compound by-products that "must be treated via a multi-pond wastewater treatment before being discharged from" the facility. (Complaint ¶¶ 6-8, Exhibit "A"). The wastewater discharges from the facility are regulated by the Alabama Department of Environmental Management ("ADEM"). (Complaint 8-9, Exhibit "A").

10.     On or around June 2008, Southeastern Cheese and ETP entered into a

3

contract for the purchase and installation of a wastewater treatment cover (the "Cover") for Pond Two in the Southeastern Cheese wastewater multi-pond system. (Complaint ¶¶ 17, Exhibit "A").

11.   The Southeastern Cheese Complaint alleges that "Defendant ETP represented and warranted to the Plaintiff that the Cover was of a type, kind, grade, quality and material suitable for use on Pond Two," and that "Defendant ETP knew, or should have known, that the Cover was critical to the overall function of Plaintiff's wastewater treatment system." (Complaint ¶¶ 18-19, Exhibit "A").

12.   On or about July 2008, ETP installed the Cover on Pond Two at the Southeastern Cheese facility.  (Complaint ¶¶ 20, Exhibit "B").

13.   In February 2011, Southeastern Cheese alleges that its facility had a catastrophic event when the Cover failed which "resulted in the loss of biomass from Pond Two, as well as the buildup of sludge and other solid deposits in Ponds Three and Four, thereby severely impairing the function of Plaintiff's wastewater treatment system." (Complaint ¶¶ 21-22, Exhibit "A").

14.   The Southeastern Cheese Complaint alleges that "the Cover failed for one or more of the following reasons: the material with which it was made suffered from a manufacturing defect; or, the Cover failed because it was not UV resistant; or, the Cover failed because the material with which it was made was unsuitable for use

4

in conjunction with the Plaintiff's waste water treatment system; or the Cover failed due the Defendant ETP's improper installation." (Complaint ¶¶ 24, Exhibit "B").

15.     On April 19, 2012, Southeastern Cheese filed a lawsuit against Engineered Textile styled *Southeastern Cheese Corporation v. Engineered Textile Products, Inc.* bearing civil action number CV 2012-900028 in the Circuit Court of Perry County, Alabama. (Complaint, Exhibit "A").

16.     Southeastern Cheese claims that due to ETP's negligent installation, defective product and breach of contract and warranty, Southeastern Cheese suffered damages in the form of the "lost value of its original cover; the lost value of its wastewater treatment system; expenses and costs associated with maintenance and management of its wastewater system; lost profit and sales; and foregone business opportunities due to resources being diverted to correct the wastewater treatment system." (Complaint ¶¶ 26, 31, Exhibit "B").

17.     AmTrust submits that no duty exists under the AmTrust policies issued to Engineered Textile to defend or indemnify ETP for the claims by Southeastern Cheese because, among other things, the AmTrust policies had lapsed before failure of the cover and because the AmTrust policies exclude coverage for damages to ETP's products, work and completed operations as defined under the policies. In addition, the AmTrust policies excludes damages related to pollutants under the

"Total Pollution Exclusion" incorporated into the subject policies of insurance.

18.  ETP has demanded that AmTrust defend and indemnify the company in the Southeastern Cheese lawsuit and AmTrust has reserved its rights to seek resolution of coverage questions while providing a defense to ETP.

19.  Based on the clear and unambiguous language of AmTrust insurance policy number KKP100486401 and the umbrella policy number KMB100486501, AmTrust asserts that a justiciable controversy exists as to whether a duty exists to defend and indemnify ETP for any claims asserted and damages suffered by Southeastern Cheese. AmTrust asserts that it is not responsible for and does not owe defense or indemnity for the claims by Southeastern Cheese.

## COUNT I

20.  AmTrust adopts and incorporates paragraphs 1 through 18 as if fully restated and set forth herein.

21.  Both the commercial general liability policy and the commercial umbrella policy issued to ETP by AmTrust contain certain terms, conditions, and exclusions which are relevant to the duty of AmTrust to defend and indemnity ETP against the claims of Southeastern Cheese.

22.  Damages "arising out of 'your product' of any part of it" are excluded from coverage under the AmTrust policies. "Your product" is defined in both of the

6

AmTrust policies as:

    **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)**    You;

        **(b)**    Others trading under your name; or

        **(c)**    A person or organization whose business or assets you have acquired; and

    **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection which such goods or products.

And includes:

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)**    The providing of or failure to provide warnings or instructions.

(AmTrust policy, page15, ¶ 21)(AmTrust umbrella policy, page 17, ¶ 27).

    23.    The AmTrust policies further exclude coverage for " 'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard'". "Your work" is defined in the AmTrust policies as:

    **(1)**    Work or operations performed by you or on your behalf, and

    **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

And include:

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)**    The providing of or failure to provide warnings or instructions.

(AmTrust policy, page 15, ¶ 22)(AmTrust Umbrella policy, page 17, ¶ 28).

24.    There are no claims in the Southeastern Cheese lawsuit for bodily injury; therefore, all of the allegations in the lawsuit arise from property damage. The alleged source of the property damage that is the subject of the Southeastern Cheese lawsuit is the failure of ETP's "product" or "work" as defined by the policy. (Complaint ¶¶ 8-9, Exhibit "A"). The relevant exclusions include any warranties that may have allegedly accompanied ETP's Cover and ETP's work installing and/or selecting the product for use at Southeastern Cheese's facility.

25.    Considering the plain language of the exclusion, the damage done to Southeastern Cheese's wastewater facility is "related to, in fact is a part of, the work done pursuant to" the selection and installation of the Cover by ETP. *Garrett v. Auto-Owners Ins. Co.*, 689 So. 2d 179, 181 (Ala. Civ. App. 1997).

26.     Finally, the AmTrust policies exclude from coverage property damage for which the insured may become obligated to pay as damages by reason of the assumption of liability in a contract or agreement.  (AmTrust policy, page 2, ¶ 2.(b))(AmTrust Umbrella policy, page 2, ¶ 2(b)).

27.     AmTrust now petitions this Court for an Order declaring that under its policies, AmTrust, has no duty to defend or provide indemnification and/or coverage for the Southeastern Cheese lawsuit.

## COUNT II

28.     AmTrust adopts and incorporates paragraphs 1 through 25 as if fully restated and set forth herein.

29.     The AmTrust policies KPP1004864201and KMB100486501became effective on February 8, 2010 and the coverage periods for both policies expired on February 8, 2011.

30.     The "sudden and catastrophic" event related to the ETP Cover, which is the subject of the Southeastern Cheese Complaint, occurred on or about the week of February 17, 2011, approximately 10 days after the coverage extended under the AmTrust policies had expired.

31.     Any loss following this coverage period would not be the responsibility of AmTrust, but rather any subsequent insurance carrier or ETP as an uninsured

corporation. *Assurance Co. of Am. v. Admiral Ins. Co.*, 2011 WL 1897589 (S.D. Ala. May 18, 2011); *American States Ins. Co. v. Martin,* 662 So.2d 245, 250 (Ala.1995) (citing *U.S. Fid. & Guar. Co. v. Warwick Dev. Co., Inc.*, 446 So. 2d 1021, 1024 (Ala.1984)) (" A majority of courts have held that in order to have liability under the terms of such a policy the 'occurrence' must arise during the policy period, for it is the insurance that is in force at the time of the property damage that is applicable rather than insurance that was in force when the work was performed.")

32.    AmTrust now petitions this Court for an Order declaring that under its policies, AmTrust, has no duty to defend or provide indemnification and/or coverage for the Southeastern Cheese lawsuit.

## COUNT III

33.    AmTrust adopts and incorporates paragraphs 1 through 30 as if fully restated and set forth herein.

34.    The Commercial General Liability policy provided to ETP contains an Total Pollution Exclusion Endorsement which provides:

> **(1)**    "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
>
> **(2)**    Any loss, cost or expense arising out of any:

10

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

(AmTrust policy, Total Pollution Exclusion Endrosement).  Pollutants are defined in the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed". (AmTrust policy, page 14, ¶ 15).

35.    The Commercial Umbrella Policy similarly excludes coverage by way of a Total Pollution Exclusion Endorsement which provides:

This insurance does not apply to:

i.    Pollution

(1)    "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

11

(2)    "Pollution cost or expense".

(AmTrust Umbrella policy, Total Pollution Exclusion Endorsement).   The same

definition of "Pollutant" is provided in the umbrella policy on page 16, ¶ 15 and in

addition, "Pollution cost or expense" is defined in the umbrella policy as meaning

"...any loss, cost or expense" related to the following:

      a.    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants"; or

      b.    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

36.    The Southeastern Cheese Complaint claims damages from the wastewater treatment facility failing to function property, thereby causing pollutants to enter the Uniontown water source in violation of a Consent Order issued by ADEM. (Complaint, ¶¶ 23-26).

37.    The byproducts from the cheese manufacturing process are pollutants and must be purified through a wastewater treatment facility.  As recognized by the Alabama Department of Environmental Management ("ADEM"), untreated organic waste from Southeastern Cheese contains pollutants were improperly released into

the water system that is operated by the City of Uniontown, Alabama. Because of the "deleterious consequences" that occur when these by byproducts are released into the groundwater, they are properly categorized as pollutants under the AmTrust policy. See, *Federated Mut. Ins. Co. v. Abston Petroleum, Inc.*, 967 So. 2d 705, 713 (Ala. 2007).

38.     The damages complained of in the Southeastern Cheese litigation arise because of the "actual, alleged, and threatened discharge of a pollutant" as defined by the AmTrust policies and therefore, there is no coverage for these claims.

39.     AmTrust now petitions this Court for an Order declaring that under its policies, AmTrust, has no duty to defend or provide indemnification and/or coverage for the Southeastern Cheese lawsuit.

## CLAIM FOR RELIEF

40.     AmTrust submits to this Court that no duty exists to defend or indemnify ETP under the subject insurance policies for the claims or damages asserted by Southeastern Cheese against ETP in the *Southeastern Cheese* litigation for several reasons. These reasons include, but are not limited to, the following:

> a.     The Engineered Textile policy was no longer in effect when the "catastrophic event" took place;
>
> b.     The alleged damages arise from Engineered Textile's "Product," "Work" and "Completed Operations," as defined in the AmTrust

13

policy and as such are excluded from coverage under the AmTrust policy; and

c.     The claims alleged against ETP involve an "actual, alleged and threatened discharge" associated with a regulatory requirement to remove pollutants, and as such are excluded from coverage under the AmTrust policy.

41.     Additional terms and conditions of the various portions of the AmTrust policies issued to ETP may apply and operate to bar and exclude coverage of the claims by Southeastern Cheese. By filing its Complaint for Declaratory Judgment, AmTrust does not waive, but specifically reserves, its right to enforce any and all terms and conditions of the subject insurance policies.

42.     AmTrust seeks a judicial determination that the subject insurance policies does not extend coverage to or for any claims, damages or events arising out of, relating to or regarding catastrophic failure of the cover that occurred on or about February 2011 involving Southeastern Cheese and giving rise to the *Southeastern Cheese* litigation.

43.     AmTrust requests this Court to take jurisdiction over this declaratory judgment action and, upon a hearing of all relevant evidence, specify and determine that AmTrust has no obligation or duty under the AmTrust insurance policies to defend or indemnify ETP for any of the claims or damages asserted by Southeastern Cheese.

14

44.    AmTrust also requests this Court to grant any and all additional or different relief as may be appropriate in order to establish substantial justice among the parties.

WHEREFORE, PREMISES CONSIDERED, AmTrust requests this Court to take jurisdiction of this dispute and, upon hearing the issues presented above and any other matters that may arise during the course of this litigation, enter judgment on behalf of and in favor of AmTrust declaring that it owes no duty to defend or indemnify ETP for any claims asserted, or sought to be asserted, by Southeastern Cheese or any other defendants in this case.

Respectfully submitted,

Jeff Friedman (ASB-6868-N77J)
Lee Patterson (ASB-5482-E47P)
Attorneys   for   AmTrust   Insurance
Company of Kansas, Inc.

**OF COUNSEL:**
Friedman, Dazzio, Zulanas & Bowling, P.C.
3800 Corporate Woods Drive
Birmingham, AL 35242

15

## PLEASE SERVE THE DEFENDANTS VIA CERTIFIED MAIL

Southeastern Cheese Corporation
c/o John P. Rankin, Registered Agent
92 Washington Street
Uniontown, AL 36786

Engineered Textile Products
c/o John K. Robinson, Registered Agent
715 Loeffler Street
Mobile, AL 36607