IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AMTRUST INSURANCE COMPANY OF KANSAS, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action Number: 2:12-cv-713-MHT-SRW |
| ENGINEERED TEXTILE PRODUCTS, INC., and SOUTHEASTERN CHEESE CORPORATION, et al., | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF AMTRUST INSURANCE COMPANY OF KANSAS, INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW the plaintiff, AmTrust Insurance Company of Kansas, Inc. ("AmTrust"), and respectfully submits its Brief in Support of its Motion for Summary Judgment pursuant to Rule 56, *Fed.R.Civ.P.*

I. NARRATIVE STATEMENT OF UNDISPUTED FACTS[1]

AmTrust submits that the following undisputed facts are relevant to the coverage issues presented in this declaratory judgment action and this Motion for Summary Judgment.

**A.    The *SCI* Litigation**

On April 19, 2012, Southeastern Cheese Corporation ("SCI") filed a lawsuit

---

[1] All exhibits referred to herein are attached to AmTrust's Evidentiary Submission.

against Engineered Textile Products ("ETP") styled *Southeastern Cheese Corporation v. Engineered Textile Products, Inc.* bearing civil action number CV 2012-900028 in the Circuit Court of Perry County, Alabama.  (Complaint, Exhibit "A").  SCI is a cheese processing company and SCI manufactures cheese through a multi-step process that produces organic compound by-products that "must be treated via a multi-pond wastewater treatment before being discharged from" the SCI facility. (Complaint ¶¶ 6-8, Exhibit "A").  SCI's wastewater treatment system and the discharges from the system are regulated by the Alabama Department of Environmental Management ("ADEM").  (Complaint ¶¶ 8-9, Exhibit "A").

On or around June 2008, SCI and ETP entered into a contract for the purchase and installation of a cover (the "ETP cover") for Pond Two in the of wastewater multi-pond system.  (Complaint ¶¶ 17, Exhibit "A").  SCI President John Pat Rankin ("Pat Rankin") described the ETP cover during his deposition as an anaerobic gas collection cover.  (Rankin Deposition, p. 295, l. 1-4; Exhibit "D").  Thereafter, on or about July 2008, ETP supplied and installed the cover on Pond Two at the Southeastern Cheese facility.  (Complaint ¶¶ 20).

Nearly three years later, in February 2011, SCI alleges in its Complaint that its wastewater treatment system suffered a "catastrophic" event when the ETP cover failed which "resulted in the loss of biomass from Pond Two, as well as the buildup

of sludge and other solid deposits in Ponds Three and Four, thereby severely impairing the function of Plaintiff's wastewater treatment system." (Complaint ¶¶ 21-22, Exhibit "A").

SCI alleges that "Defendant ETP represented and warranted to the Plaintiff that the Cover was of a type, kind, grade, quality and material suitable for use on Pond Two," and that "Defendant ETP knew, or should have known, that the Cover was critical to the overall function of Plaintiff's wastewater treatment system." (Complaint ¶¶ 18-19, Exhibit "A").

The SCI Complaint alleges that "the Cover failed for one or more of the following reasons: the material with which it was made suffered from a manufacturing defect; or, the Cover failed because it was not UV resistant; or, the Cover failed because the material with which it was made was unsuitable for use in conjunction with the Plaintiff's waste water treatment system; or the Cover failed due the Defendant ETP's improper installation." (Complaint ¶¶ 24, Exhibit "A").

SCI claims that it suffered damages in the form of the "lost value of its original cover; the lost value of its wastewater treatment system; expenses and costs associated with maintenance and management of its wastewater system; lost profit and sales; and foregone business opportunities due to resources being diverted to correct the wastewater treatment system." (Complaint ¶¶ 26, 31, Exhibit "A").  SCI

has asserted claims for negligence, wantonness, Alabama Extended Manufacturer's Liability Doctrine, breach of contract and breach of warranty against ETP. (See Complaint, Exhibit "A").

## B.   The AmTrust Insurance Policies

AmTrust issued a commercial general liability insurance policy bearing policy number KPP1004864201 to ETP with an effective policy period from February 8, 2010-February 8, 2011. (Exhibit "B".) In addition to this CGL policy, AmTrust issued to ETP a commercial liability umbrella policy bearing policy number KMB100486501 with an effective policy period from February 8, 2010 - February 8, 2011. (Exhibit "C").

## II. STANDARD OF REVIEW

Summary judgment should be granted where the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), *Fed. R. Civ. P.* A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511, 91 L.Ed. 2d. 202 (1986). After the moving party has met its burden of proof under Rule 56(c), the burden of proof shifts to the non-moving party. "The non-moving party must go beyond the pleadings and by its own

affidavits, or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Robinson v. Ford Motor Co.,* 967 F. Supp. 482, 484 (M.D. Ala. 1997), citing *Celotex,* 477 U. S. at 324, 106 S.Ct. at 2553.   General allegations, which do not reveal detailed and precise facts, will not prevent the award of summary judgment. *Resolution Trust Corp. v. Dunnmar Corp.,* 443 F.3d 587, 592 (11th Cir. 1995).

### III.  LEGAL ARGUMENT

AmTrust submits that no duty exists under the AmTrust policies issued to ETP to defend or indemnify ETP for the claims in the *SCI* litigation for multiple reasons. First, even assuming that there has been an occurrence as defined in the polices, the AmTrust policies exclude coverage for any and all claims or damages at issue by way of the "Total Pollution Exclusion" incorporated into the subject policies of insurance. The AmTrust policies also exclude coverage for damages to ETP's products, work and contractual liability as defined under the policies.

A.   **The Total Pollution Exclusion Endorsement in the AmTrust Policies Excludes Coverage for All Claims Against ETP in the Underlying SCI Litigation.**

Because the Total Pollution Exclusion Endorsement to the AmTrust insurance policies precludes coverage for property damage arising from pollution and/or any alleged loss, cost or expense arising from pollution, AmTrust has no obligation to

defend nor indemnify ETP for the claims asserted by SCI and summary judgment is due to be entered in favor of AmTrust.

Pollution exclusions such as that found in the AmTrust policies have been upheld by the Supreme Court of Alabama, Federal District Courts in this state as well as the 11th Circuit Court of Appeals as excluding coverage for claims arising from or relating to pollution. *See ex: James River Ins. Co. v. Ground Down Engineering*, 540 F.3d 127 (11th Cir.2008)*; Shalimar Contractors, Inc. v. American States Ins. Co.*, 975 F.Supp.1450 (M.D.Ala.1997)(pollution exclusion precludes coverage for claims against insured lead abatement contractor arising from alleged lead poisoning of children during insured's lead abatement); *Federated Mut. Ins. Co. v. Abston Petroleum, Inc.*, 967 So.2d 705 (Ala.2007)(pollution exclusion precludeds coverage for claims arising out of gasoline leak from insured's gasoline storage tanks and pipes).

The AmTrust Commercial General Liability policy contains a Total Pollution Exclusion Endorsement which excludes coverage for:

    **(1)**    "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

    **(2)**    Any loss, cost or expense arising out of any:

6

    **(a)**    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    **(b)**    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

(AmTrust Policy; Exhibit "B," Bates Number 0024).  Pollutants are defined in the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed". (AmTrust policy; Exhibit "B," Bates Number 0022).

The Commercial Umbrella Policy similarly excludes coverage by way of a Total Pollution Exclusion Endorsement which provides:

    This insurance does not apply to:

    i.    Pollution

    (1)    "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

7

(2)    "Pollution cost or expense".

(AmTrust Umbrella Policy; Exhibit "C," Bates Number 0055).  The same definition

of "Pollutant" is provided in the umbrella policy on page 16, (Bates Number 0053)

and in addition, "Pollution cost or expense" is defined in the umbrella policy as

meaning "...any loss, cost or expense" related to the following:

a.    Request, demand, order or statutory or regulatory requirement
      that any insured or others test for, monitor, clean up, remove,
      contain, treat, detoxify or neutralize, or in any way respond to or
      assess the effects of, "pollutants"; or

b.    Claim or suit by or on behalf of a governmental authority for
      damages because of testing for, monitoring, cleaning up,
      removing, containing, treating, detoxifying or neutralizing, or in
      any way responding to, or assessing the effects of, "pollutants".

(AmTrust Umbrella Policy; Exhibit "C," Bates Number 0053).

It is undisputable that, on its face, the Complaint filed by SCI against ETP and

all alleged damages set out therein arise out of and/or relate to alleged "property

damage" resulting from the "...actual alleged or threatened discharge, dispersal,

seepage, migration, release or escape of 'pollutants'" as well as alleged costs SCI

claims to have incurred in order to "...test for, monitor, clean up, remove, contain,

treat, detoxify or neutralize,...respond to, or assess the affects of "pollutants".

For example, in the SCI Complaint, SCI defines the byproducts of its cheese

manufacturing process as "waste" that "... must be treated via a multi-pond waste

water treatment system... for purposes of the discharge of waste water pursuant to a permit issued by the Alabama Department of Envioronmental Management (ADEM)." (Complaint, ¶¶ 7-9). The SCI Complaint describes the particular pond of its wastewater system that was covered by the ETP cover as "...a covered methanogenic unit in which anaerobic bacteria further break down the acetic acid and other waste...." (Complaint, ¶ 11).

With respect to alleged damage SCI claims as a result of ETP's alleged misconduct, SCI claims that the failure of the ETP cover caused the "loss of biomass from Pond Two, as well as the buildup of sludge and other solid deposits in Ponds Three and Four, thereby severely impairing the function of Plaintiff's wastewater treatment system." (Complaint, ¶¶21-22). SCI claims that as a result of the failure of the ETP cover, ADEM required SCI to take actions in order to comply with a consent decree which SCI claims caused it to incur expenses in ultimately modifying its wastewater treatment system after the ETP cover failed. SCI claims this resulted in lost profits. (Complaint, ¶¶ 25, 26, 31) (John Rankin Deposition, p. 209, line 10 - p. 210, line 23).

As evidenced by the plain language of SCI's Complaint, clearly all of SCI's claims and alleged damages arise from the "...actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'..." as excluded by the

policy.  Each and every claim and/or element of damages is pollution related.   SCI

not only categorizes the byproducts of its cheese production within its treatment

system as waste in its Complaint but Mr. Rankin testified that the biogas controlled

by the ETP is methane gas.  (John Rankin Deposition, p. 452, lines 5-8).  In addition

to waste byproducts, the chemicals used in SCI's operations and even human waste

from the SCI facility is deposited into the wastewater treatment system.  Mr Rankin

testified that "It's anything that goes down the drain at the plant goes out to the

lagoon." (John Rankin Deposition, p.453).  This includes toilets and anything poured

into sinks or drains according to Mr. Rankin.  (John Rankin Deposition, p. 453).

In  *James River Ins. Co. v. Ground Down Engineering*, 540 F.3d 127 (11th

Cir.2008), the 11th Circuit Court of Appeals held that a pollution exclusion precluded

coverage for an insured environmental engineering business arising out of claims that

the insured negligently failed to discover construction debris and fuel storage tanks

buried underground during a Phase I assessment.  There was no allegation that the

insured actually caused the pollution at issue.

James River insured Ground Down Engineering, an environmental engineering

firm,  which  was  hired  by  Priority  Development  to  perform  an  environmental

assessment of property that Priority Development sought to purchase.  *James River*

*Ins. Co. v. Ground Down Engineering*, 540 F.3d 127, 1272 (11th Cir.2008).  The

insured performed its site assessment and reported to Priority Development that no adverse conditions had been found on the site at issue. *Id.* at 1272. After purchasing the site, Priority Development began work and discovered construction debris, drums and part of an underground storage tank that had contained fuel. *Id.*

Priority Development filed suit against the insured for breach of contract, negligence and misreprestation for failing to discover and/or notify of the construction debris and fuel storage drums during its Phase I site assessment. *Id.* Priority alleged that it was required to incur expenses in removing, disposing of and otherwise remediating the site. *Id.* at 1272-1273.

James River provided insurance under a professional liability policy which contained a pollution exclusion similar to that in the AmTrust policy and a definition of "pollutants" similar to that of the AmTrust policy *Id.* at 1273. James River defended its insured under a reservation of rights and filed a declaratory judgment action seeking determination that the pollution exclusion precluded coverage for the claims against its insured. The Florida district court denied James River's motion for summary judgment and James River appealed to the 11th Circuit. *Id.* at 1273. The district court reasoned that the claims against the insured rose out of negligent failure to discover pollution as opposed to the insured in some way causing the pollution. *Id.*

11

On appeal, the 11th Circuit vacated and remanded ordering that the district court must enter summary judgment in favor of James River. *Id.* 1277. The Court of Appeals reasoned in part that

> [a]ssuming for a moment that all materials found by Priorty are in fact pollutants, the claim clearly arises out of pollution. The exclusion states that the insurance does not apply to any "damages, claim or suit" arising out of pollution including damages for devaluation of property and requests that any insured or others "monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to ... the effects of pollutants, environmental impairments, contaminants."

*Id.* at 1275.   The Court of Appeals also noted that Priority was seeking to recover from the insured alleged damages for lost profits, lost in value and cost of remediation. *Id.* The Court stated that such claims for damages "... arise directly out of the alleged discovered pollution, and are covered explicitly by the exclusion. Although the alleged conduct was nelgignece in performing site assessment, Priority's claim depends upon the existence of environmental contamination." Id.at 1275.

Likewise, in *Haman, Inc. v. St. Paul Fire and Marine Ins. Co.*, 18 F.Supp.2d 1306 (N.D.Ala.1998), the United States District Court held that a pollution exlusion barred coverage for an insured's claim for damages arising out of the alleged improper extermination of the insured's hotel. Similar to the fact in the *James River*

12

case, there was no allegation that the insured in *Haman* was responsible for causing the pollution at issue yet the district court held that a pollution exlusion precluded coverage.

The insured in *Haman* owned a hotel and hired an exterminator to perform extermination services. *Id.* at 1307. It was thereafter determined that the same exterminator had used a toxic pesticide to exterminate some residential properties and ultimately the EPA required that the insured, because he had hired the same extermintor, would be required to close his hotel and "decontaminate" the hotel before reopening to the public. *Id.* The insured incurred financial losses as a result and made a claim to its insurer St. Paul which provided insurance coverage for the hotel. *Id.* St. Paul denied coverage and the insured filed suit. *Id.*

St. Paul filed a motion for summary judgment arguing that the pollution exclusion contained in its policy precluded coverage for the insured's losses. The district court noted that the exclusion provided in part that coverage was excluded for "[p]ollution caused directly or indirectly by the release, discharge, [or] dispersal ... of pollutants or contaminants..." *Id.* at 1308. Because there was no dispute that the substance used for the purposes of the extermination was a pollutant, the district court entered summary judgment in favor of the insured.

Lastly, in *QBE Insurance Corp. v. Estes Heating & Air Conditioning*, 2012 WL

13

413968 (S.D. Ala. 2012)(not reported in F. Supp 2d), the United Stated District Court for the Southern District of Alabama held that summary judgment was due to be entered in favor of an insurer where a Total Pollution Exclusion Endorsement, identical to that contained in the AmTrust policy, precluded coverage for claims arising from alleged injury due to Chinese drywall.

The insured in this case was an HVAC contractor sued by residents who claimed they were injured by exposure to gasses emitted from Chinese drywall used in construction of their residences. *Id.* at *1. There was no dispute that the insured did not install the drywall at issue but plaintiffs claimed that the insured's HVAC installation caused or exacerbated plaintiff injuries and exposure to the drywall gasses. *Id.* Claims of negligence, wantonness, strict product liability, breach of warranty, breach of contract were asserted against the insured. *Id.*

In a declaratory judgment action seeking determination of its obligations to defend or indemnity the insured, QBE asserted that it owed no such duty in part because the total pollution exclusion in its policy barred coverage and that summary judgment was due to be entered in its favor. *Id.* at *3. The Total Pollution Exclusion in the QBE policy was identical to that in the AmTrust policy at issue. *Id.* at *5.

While there was no dispute that the gases from the drywall would be a pollutant as defined in the policy, the insured argued that because it did not manufacture or

install the drywall at issue, it was not the party that caused the pollution. *Id.*   The

District Court noted that "[t]his court is aware of no cases in Alabama that distinguish

between pollution created by the insured and pollution created by a third party." *Id.*

The Court entered summary judgment in favor of QBE finding "...under the

unambiguous language of the policy the claims in this case are excluded from

coverage." *Id.* at *7.

Because all of SCI's claims and alleged damages in the underlying litigation

arise out of and relate to pollution as defined in the AmTrust policy and because any

property damage, losses, costs or expenses arising out of pollution are excluded from

coverage by the Total Pollution Exclusion Endorsement, summary judgment is due

to be entered in AmTrust's favor finding that there is no obligation on the part of

AmTrust to defend nor indemnify ETP in the *SCI* litigation.

**B.     There is No Coverage Under the AmTrust Policies for Contract or
        Warranty Claims**

As part of the claims asserted in SCI's Complaint against ETP, SCI alleges that

ETP breached contracts and warranties with respect to the ETP cover at issue.

(Complaint, Exhibit "A," Counts Six and Seven).  Because claims sounding in breach

of contract are not occurrences under a commercial general liability insurance policy,

and because contractual liability is excluded by the AmTrust policies, there is no

15

coverage afforded to ETP under the AmTrust policies for plaintiffs breach of contract and breach of warranty claims.

Generally, under Alabama law, a breach of a contract is not an occurrence as defined in a commercial general liability insurance policy. See *Reliance Insurance Company v. Gary C. Wyatt, Inc.*, 540 So.2d 688(Ala.1988); *Auto-Owners Ins. Co. v. Toole*, 947 F.Supp. 1557, 1564 (M.D.Ala.1996)(breach of contract claims were also held to not fall within the definition of an occurrence). See also *Owners Ins. Co. v. Shep Jones Const., Inc.*, 2012 WL 1642169, *6 (N.D. Ala.2012)(not reported in F.Supp.2d) in which breach of construction contract claim and resulting damages held not to be an occurrence under a general liability policy.

Even if an argument could be made that SCI's contract or warranty claims against ETP could arguably be considered "occurrences" under the terms of the policy, the Contractual Liability Exclusions in the AmTrust polices exclude such coverage and provide as follows:

2.    Exclusions

This insurance does not apply to:

(b) Contractual Liability

"Bodily injury" or "Property damage" for which the insured is obligated to pay as damages by reason of the assumption of liability in a contract or agreement.

16

\*\*\* \*\*\* \*\*\*

(AmTrust Policies, Exhibits "B" and "C," Bates # 0010 and 0039).

Because there is no coverage afforded to ETP for SCI's breach of contract and/or warranty claims under the AmTrust insurance policies, AmTrust has no obligation to defend nor indemnify ETP for such claims and summary judgment is due to be entered in AmTrust's favor

### C.    There is No Coverage Under the AmTrust Policies for Damage to ETP's Product or ETP's Work.

As part of its alleged damages, SCI asserts that it is entitled to recover from ETP costs associated with purchasing, installing and replacing the ETP cover at issue. (Deposition of John Rankin, pp. 134-135). Because such damages are excluded from coverage by the AmTrust policies, no coverage for such damages is afforded to ETP and AmTrust has no obligation to defend or indemnify ETP for such claims or damages, including those for alleged warranties related to such work or product.

Damages "arising out of 'your product' of any part of it" are excluded from coverage under the AmTrust policies.  "Your product" is defined in both of the AmTrust policies as:

(1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)**    You;

**(b)**    Others trading under your name; or

**(c)**    A person or organization whose business or assets you have acquired; and

**(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection which such goods or products.

And includes:

**(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)**    The providing of or failure to provide warnings or instructions.

(AmTrust policy, Exhibit "B," Bates # 0023)(AmTrust umbrella policy, Exhibit "C,"

Bates # 0054).

The AmTrust policies further exclude coverage for " 'property damage' to

'your work' arising out of it or any part of it and included in the 'products-completed

operations hazard'". "Your work" is defined in the AmTrust policies as:

**(1)**    Work or operations performed by you or on your behalf, and

**(2)**    Materials, parts or equipment furnished in connection with such work or operations.

And include:

18

(1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2)    The providing of or failure to provide warnings or instructions.

(AmTrust policy, Exhibit "B," Bates #0023)(AmTrust Umbrella policy, Exhibit "C," Bates #0054).

The Supreme Court of Alabama has held that claims of faulty workmanship are not "occurrences" under a commercial general liability insurance policy and that an insurer is not responsible for the removal or replacement of defective property of its insured. *See ex: Town & Country Property, LLC v. Amerisure Ins. Co.*, 111 So.3d 699 (Ala.2011).   There are no claims in the SCI lawsuit for bodily injury; therefore, all of the allegations in the lawsuit arise from alleged property damage.  Also missing from the SCI complaint is any allegation that the failure of the ETP cover caused actual damage to any components or structures of the wastewater treatment system, other than requiring that the ETP cover itself be replaced.

Unquestionably, the alleged source of the property damage that is the subject of the SCI litigation is the ETP cover itself, i.e. the "product" or "work" of ETP as defined by the policy.  (Complaint ¶¶ 8-9, Exhibit "A").  Thus the alleged damage done to SCI's wastewater facility is "related to, in fact is a part of, the work done

pursuant to" the selection and installation of the Cover by ETP and any such damages are excluded by the AmTrust policy language.  See *Garrett v. Auto-Owners Ins. Co.*, 689 So. 2d 179, 181 (Ala. Civ. App.  1997).

Because there is no coverage under the AmTrust policies for ETP's product or ETP's work, summary judgment is due to be entered in AmTrust's favor.

**D.**     **Any Alleged Damage Claimed by SCI To Have Occurred After the AmTrust Insurance Policy Periods Expired Are Not Covered by the AmTrust Insurance Policies.**

Because the damages claimed by SCI to have arisen as a result of the failure of the ETP cover did not occur during the AmTrust policy periods, no coverage is afforded ETP under the AmTrust policies for such damages or claims arising from such damages.

The AmTrust policies of insurance provide in pertinent part that:

b.     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "covered territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period; and

*** *** ***

(See AmTrust policies, Bates #09 and 0039; attached as Exhibits "B" and "C").

Because the damages which SCI seeks to recover occurred *after* the AmTrust policies expired on February 8, 2011, no coverage is afforded ETP under the AmTrust policies for such damages.   Under Alabama law, the time of an occurrence is not the time of the alleged wrongful act, i.e. the alleged improper sale, supply and/or improper installation of the ETP cover, but when SCI allegedly incurred damage as a result thereof. See *USF&G v. Warwick*, 446 So.2d 1021 (Ala.1984).

During his deposition, SCI President John Rankin testified that *after* April 8, 2012, SCI was no longer permitted to discharge from its wastewater treatment system to the city sewer and thereafter undertook to alter the manner in which SCI disposed of waste following treatment.  (John Rankin Deposition, p. 156, 1.18-1.23).  For example, SCI installed a spray system to discharge the remaining waste rather than continuing to route it to the city sewer system and Mr. Rankin testified that the system was installed in 2012.  (John Rankin Deposition, pp. 164, 1.21-165, 1.11; p. 167, 1.2-1.16).  Mr. Rankin testified that SCI was permitted to operate its wastewater treatment system up until April 8, 2012.  (Deposition of John Rankin, p.172, 1.13-p. 173, 1.12).

SCI seeks to recover as damages from ETP in the underlying case all of its expenses allegedly incurred in transitioning its wastewater treatment system from discharging to the City sewer system.  Because these alleged damages occurred after

the AmTrust policies expired on February 8, 2011, they do not fall under any coverage afforded by the AmTrust policies and AmTrust has no duty to defend nor indemnify ETP for such damages.  As such, summary judgment is due to be entered in AmTrust's favor.

## IV.  CONCLUSION

WHEREFORE, PREMISES CONSIDERED, AmTrust respectfully moves this Court to enter summary judgment in favor of AmTrust declaring that it owes no duty to defend or indemnify ETP for any claims or damages asserted by SCI in the underlying litigation.

Respectfully submitted,

Jeff Friedman (ASB-6868-N77J)
Lee Patterson (ASB-5482-E47P)
Attorneys    for    Plaintiff    AmTrust
Insurance Company of Kansas, Inc.

**OF COUNSEL:**
Friedman, Dazzio, Zulanas & Bowling, P.C.
Dazzio, Zulanas & Bowling, P.C.
3800 Corporate Woods Drive
Birmingham, Alabama 35242

## **CERTIFICATE OF SERVICE**

I hereby certify I have caused a copy of the foregoing pleading to be served on counsel for all parties via electronic filing this __19__ day of __July__, 20_13_.

Mr. Parker Miller
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103
parker.miller@beasleyallen.com

Mr. Michael R. Pennington
Mr. Robert J. Campbell
BRADLEY ARANT BOULT CUMMINGS, LLP
One Alabama Place
1819 Fifth Avenue North
Birmingham, Alabama 35203-2104
mpennington@babc.com
rjcampbell@babc.com

_____
Of Counsel