**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **AMTRUST INSURANCE COMPANY OF KANSAS, INC.** | ) ) ) | |
| **Plaintiff,** | ) ) | **Case No.:  2:12-cv-713-MHT** |
| **vs.** | ) ) | |
| **ENGINEERED TEXTILE PRODUCTS, INC., and SOUTHEASTERN CHEESE CORPORATION,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

**DEFENDANT ENGINEERED TEXTILE PRODUCTS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

In this lawsuit, Plaintiff AmTrust Insurance Company of Kansas, Inc. ("AmTrust") seeks a declaratory judgment that "it owes no duty to defend or indemnify" Engineered Textile Products, Inc. ("ETP") for the claims asserted against ETP in a state court lawsuit brought by Defendant Southeastern Cheese Corporation ("Southeastern Cheese").  The underlying state court lawsuit was pending when AmTrust filed brought this case, and the underlying lawsuit remains pending now.  On October 17, 2012, ETP moved to dismiss AmTrust's complaint on several substantive and jurisdictional grounds, reserving its right to move for a transfer of this case to the Southern District of Alabama, Northern Division, in the event the Court determined it had subject matter jurisdiction (Doc. 16).  ETP's motion remains pending before the Court.

In accordance with the requirements of Section 2 of the Court's Uniform Scheduling Order (Doc. 20), which sets a deadline for all dispositive motions, ETP now separately and additionally moves the Court, without waiving its pending motion to dismiss, to enter either full summary judgment in its favor as to all counts of AmTrust's complaint or, alternatively, partial

summary judgment denying and dismissing AmTrust's claim for entry of a "no duty to defend" declaration. ETP does so on the grounds that there are no genuine issues as to any material fact, and that ETP is entitled to judgment in its favor as a matter of law. Further, this motion is made subject to and without waiver of: (a) ETP's pending challenges to the Court's subject matter jurisdiction and arguments as to why the Court should decline to exercise such jurisdiction even if it has it (Doc. 16); and (b) ETP's consistently reserved right to seek a transfer of this action to the Southern District, Northern Division, pursuant to 28 U.S.C. § 1404, if the Court finds that it does have subject matter jurisdiction and elects to exercise it, as this action has no connection whatsoever with this District (*see, e.g.,* Doc. 9 at 1; Doc. 16 at 3, 21; Doc. 17 at 3).

This motion is based upon the pleadings in this matter, the narrative summary of undisputed facts and the memorandum brief set out herein; and the following evidentiary materials which are incorporated by reference:

(a)     The complaint from the underlying state action, *Southeastern Cheese Corporation v. Engineered Textile Products, Inc.,* CV-2012-900028 (Circuit Court for Perry County, Alabama), which is attached as Exhibit "A" to AmTrust's complaint (Doc. 1-1);

(b)     The commercial general liability insurance policy issued by AmTrust to ETP, policy number KPP1004864 01 (the "CGL Policy"), which is attached as Exhibit "B" to AmTrust's complaint (Doc. 1-2);

(c)     The commercial liability umbrella policy issued by AmTrust to ETP, policy number KMB1004865 01 (the "Umbrella Policy"), which is attached as Exhibit "C" to AmTrust's complaint (Doc. 1-3); and

(d)     Collective **Exhibit "A,"** consisting of authenticated copies of the insurance policies which insured ETP following the expiration of AmTrust's policies, namely:

2

(1) the commercial general liability insurance policy issued by QBE Insurance Corporation to ETP, policy number ANM33659, with a policy period from February 8, 2011 to February 8, 2012; (2) the commercial liability umbrella policy issued by QBE Insurance Corporation to ETP, policy number ANU33731, with a policy period of February 8, 2011 to February 8, 2012; (3) the commercial general liability insurance policy issued by Starr Indemnity & Liability Company to ETP, policy number SIANML006900-00, with a policy period from February 8, 2012 to February 8, 2013; and (4) the commercial liability umbrella policy issued by Starr Indemnity & Liability Company to ETP, policy number SIANUM007827-00, with a policy period of February 8, 2012 to February 8, 2013.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

**I.     THE UNDERLYING DISPUTE AND STATE LAWSUIT**

1.      ETP is an Alabama corporation with its principal place of business located in Mobile, Alabama (Doc. 10 at ¶ 1; *cf.* Doc. 1 at ¶ 2).  ETP is a fabricator of industrial and environmental fabric products (Doc. 10 at ¶ 1; *cf.* Doc. 1 at ¶ 8).

2.      ETP maintains continuous commercial insurance coverage, through both general commercial liability and umbrella liability policies.  These policies, however, have been issued by different insurers over time.  From February 8, 2010 through February 8, 2011, ETP was covered by commercial general liability and umbrella policies issued by AmTrust (Docs. 1-2 & 1-3).  From February 8, 2011 through February 8, 2012, ETP was covered by commercial general liability and umbrella policies issued by QBE Insurance Corporation (Ex. A at Tabs 1-2). From February 8, 2012 through February 8, 2013 (the time period during which this lawsuit was filed), ETP was covered by commercial general liability and umbrella policies issued by  Starr Indemnity & Liability Company (*id.* at Exs. 3-4).

3.      Southeastern Cheese entered into a contract with ETP in 2008, for the purchase of a cover for an industrial waste pond (Doc. 1-1 at ¶¶ 17, 57-58; *see also* Doc. 16-1 (ETP's contract with Southeastern Cheese, dated May 29, 2008). *Cf.* Doc. 1 at ¶ 10).  The cover was intended for the second of a four pond sequential system that collectively made up Southeastern Cheese's waste water treatment system (Doc. 1-1 at ¶¶ 9-14, 17; *cf.* Doc. 1 at ¶ 10).

4.      Installation of the pond cover was completed in or around July 2008 (Doc. 1-1 at ¶ 20; *cf.* Doc. 1 at ¶ 12).

5.      According to Southeastern Cheese's complaint from the underlying action, the pond cover allegedly "suffered a catastrophic failure" sometime "[i]n or around February 2011" (Doc. 1-1 at ¶ 21; *cf.* Doc. 1 at ¶ 13).

6.      Although the exact cause of the cover's supposed failure is not alleged, Southeastern Cheese speculated in the underlying complaint that the pond cover failed "for one or more of the following reasons: the material with which it was made suffered from a manufacturing defect; or, the Cover failed because it was not UV resistant; or, the Cover failed because the material with which it was made was unsuitable for use in conjunction with [Southeastern Cheese's] waste water treatment system; or, the Cover failed due to Defendant ETP's improper installation" (Doc. 1-1 at ¶ 24 (bracketed text added); *cf.* Doc. 1 at ¶ 14).

7.      On April 19, 2012, Southeastern Cheese filed the underlying lawsuit against ETP (Doc. 1-1, *passim*; *cf.* Doc. 1-1 at ¶ 15).

8.      In the underlying lawsuit, Southeastern Cheese claims various injuries as a result of the pond cover's alleged "catastrophic failure," ranging from "the lost value of" the pond cover itself, to "substantial economic damage[s]" arising from the resulting non-functionality of its entire waste water treatment system, and to repair and compliance costs incurred to "restore

its waste water treatment system to a minimum level of functionality" as required by the terms of a pre-existing consent agreement with the Alabama Department of Environmental Management ("ADEM") (Doc. 1-1 at ¶¶ 23, 25-26, 31; *cf.* Doc. 1 at ¶ 16).

9.      The causes of action pled in the underlying complaint include alleged violations of the Alabama Extended Manufacturer's Liability Doctrine, negligence, negligent failure to warn, negligent supervision, wantonness, breach of contract, and breach of warranty (Doc. 1-1, *passim*).  On each count , the underlying complaint seeks the recovery of compensatory, consequential and incidental damages of various types, as well as punitive damages (*Id.*).

## II.    AMTRUST'S COMPLAINT IN THIS ACTION

10.     AmTrust filed this action on August 20, 2012 (Doc. 1).  In its complaint, AmTrust asserts three counts, all pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, under which AmTrust seeks a determination by the Court that it has "no duty . . . to defend or indemnify ETP under [either the CGL Policy or Umbrella Policy] for the claims or damages asserted by Southeastern Cheese against ETP" in the underlying lawsuit (Doc. 1 at ¶ 40 (bracketed text added); *see also id.* at 15 (Prayer for Relief)).

11.     AmTrust contends that it owes ETP no duty of defense or indemnity for three (3) reasons: (a) its policies were "no longer in effect when the 'catastrophic event' took place;" (b) "[t]he alleged damages arise from Engineered Textile's 'Product,' 'Work' and 'Completed Operations,' as defined in the AmTrust polic[ies] and as such are excluded from coverage under the AmTrust polic[ies];" and/or (c) "[t]he claims alleged against ETP involve an 'actual, alleged and threatened discharge' associated with a regulatory requirement to remove pollutants, and as such are excluded from coverage under the AmTrust polic[ies]" (Doc. 1 at ¶ 40) (bracketed text added).

12.   In response to AmTrust's complaint, ETP filed a motion to dismiss or, alternatively, to stay this action, arguing that the Court lacks subject matter jurisdiction but that, even if it had jurisdiction, it should decline to exercise it for a number of reasons, and that in any event AmTrust's complaint should be dismissed because AmTrust had failed to name ETP's subsequent insurers as parties, even though its subsequent insurers were necessary and indispensable parties to the adjudications AmTrust was asking the Court to make in this case (Doc. 16).  The motion specifically disclosed the identity of ETP's subsequent insurers (*see, e.g.*, Doc. 16 at 11-12 *and* Doc. 16-5 at ¶ 3).  AmTrust, which after all admittedly has been sharing with ETP's successor insurers the costs and responsibilities of defending ETP in the underlying lawsuit to date, does not dispute and has never disputed the identity or existence of those succeeding insurers, whose policies as issued are attached as Collective Exhibit A.

<u>**ARGUMENT**</u>

I.   **FULL SUMMARY JUDGMENT AS TO ALL OF AMTRUST'S CLAIMS IS DUE TO BE GRANTED BECAUSE AMTRUST HAS FAILED TO JOIN ALL NECESSARY AND INDISPENSABLE PARTIES**

A plaintiff's failure to join parties required under Federal Rule of Civil Procedure 19 is grounds for dismissal under Federal Rule of Civil Procedure 12(b)(7).  This "defense requires the court to determine whether the party that the plaintiff failed to join is 'indispensable' under Rule 19."  *American Econ. Ins. Co. v. Rutledge*, No. 2:05cv840-MHT, 2006 WL 3924786, at *2 (M.D. Ala. Dec. 20, 2006).  Rule 19, in turn, provides that a party is necessary and must be joined if, among other reasons, the party's absence prevents a court from according "complete relief," or the absentee "claims an interest relating to the subject of the action" and, in the party's absence, an existing party would be subjected to a risk of incurring "inconsistent obligations."   FED. R. CIV. P. 19(a)(1).  If a party is a necessary one and cannot be joined, the court must consider

whether "in equity and good conscience" the case should continue in the party's absence or be dismissed.  FED. R. CIV. P. 19(b).

Numerous courts have held that where, as here, multiple insurers covered an insured's liability over different policy periods, the potential for "whipsaw" of the insured resulting from potentially inconsistent determination by different courts of facts commonly relevant to coverage renders all of its insurers necessary and indispensable parties in a declaratory judgment action brought by one of them against the insured.  *See*, *e.g.*, *Schlumberger Indus., Inc. v. Nat'l Surety Corp.*, 36 F.3d 1274, 1285-88 (4th Cir. 1994); *Cont'l Cas. Co. v. Taco Bell Corp.,* 127 F. Supp. 2d 864, 867-71 (W.D. Mich. 2001); *Emp'rs. Ins. Of Wausau v. Jostens, Inc*., 181 F.R.D. 623, 624-28 (D. Minn. 1998).  *Cf.* FED. R. CIV. P. 57, 1937 advisory committee note (noting that "all parties having an interest [in a requested declaration] or adversely affected [by it] must be made parties or be cited") (bracketed text added).  The rationale for such holdings is two-fold: *first*, judicial economy, and the desire to avoid inviting duplicative litigation against an insured by its consecutive insurers to resolve similar litigation over the timing of the "occurrence;" and *second*, to avoid the potential for entry of inconsistent adjudications of fact regarding commonly relevant facts such as the timing of the "occurrence" and the "trigger" of coverage.

The obvious problem is that the insured—if forced to litigate the issue of when an insurable event occurred with each insurer separately—"could be 'whipsawed,' and wind up with less than full coverage even though it was legally entitled to full coverage."  *Schlumberger,* 36 F.3d at 1287 (citation and emphasis omitted).  Indeed, if different courts rule differently on when an insurable event "occurred," an insured having continuous coverage from a series of insurers could wind up with inconsistent judgments depriving the insured of coverage from any of them—even though it was logically entitled to coverage from at least one of them.  As

explained by the Fourth Circuit:

> If two courts handle difference aspects of the case separately, the possibility of inconsistent judgments arises.  In particular, different interpretations of law . . . or different findings of fact . . . will result in inconsistent judgments . . . .
>
> The potential for prejudice arising from different factual determinations . . . is, we think, especially pronounced: if all of the insurers are not joined in the same case and instead the matter of when the damage occurred is determined by two different courts, and their determinations differ from one another, [the insured] will receive less than full coverage.  Importantly, if the first court determines that the damage occurred during a period of time covered by an insurer only in the second case, [the insured] will be unable to use this finding preclusively against that insurer, for that insurer was not a party to the first case.  This potential for factual . . . 'whipsaw' argues strongly in favor of having one court adjudicate the entire matter with all the parties before it, and is, we think, sufficient to establish that [an insured's successive] insurers are all both necessary and indispensible parties . . . .

*Id.* at 1286-87.

The instant case presents precisely the same issues, as ETP has consistently pointed out from the time it first responded to the complaint (Doc. 16 at 9-12).  For example, AmTrust seeks a declaration—based upon allegations outside of and contradictory to the underlying complaint—that it has no duty to defend or indemnify ETP because AmTrust claims the supposed failure of the pond cover occurred after the expiration of its policies' coverage periods (even though Southeastern Cheese alleges in the underlying complaint that the failure may have occurred during the coverage period of AmTrust's policies—an issue discussed in greater detail in Section II.C).  Even assuming *arguendo* that AmTrust could legitimately raise that issue as a ground for denying ETP a defense, the adjudication of the issue of when the pond cover supposedly failed in the absence of ETP's subsequent insurers would expose ETP to the risk that it could end up with no coverage at all due to conflicting findings by different courts as to the date of that "occurrence."  As a matter of basic due process, any adjudication by this Court on the timing of the pond cover's supposed failure could not bind the other insurers in their absence.

Therefore, even if this issue could be properly raised here and even if the Court agreed that the failure occurred when AmTrust claims it did, ETP's subsequent insurers would remain free to argue in separate litigation that the cover failed before their coverage periods began. The potential for such conflicting findings is all the more pronounced given Alabama's continued adherence to the mutuality of estoppel requirement for application of the *res judicata* and collateral estoppel doctrines. *McMillian v. Johnson*, 878 F. Supp. 1473, 1520 (M.D. Ala. 1995), *rev'd in part on other grounds*, 88 F.3d 1554 (11th Cir.1996) ("It is noteworthy that Alabama has not followed the trend of abolishing the requirement that parties be identical, sometimes referred to as the mutuality of estoppel requirement."). As a result, ETP's successor insurers to AmTrust are necessary and indispensable parties to this proceeding. *Schlumberger,* 36 F.3d at 1287 (finding insured's subsequent insurers to be "both necessary and indispensable parties" to earlier insurer's declaratory judgment action); *Empl'rs. Ins. of Wausau,* 181 F.R.D. at 627 (concluding that insurer's predecessor insurer "[wa]s a necessary  party" to subsequent insurer's declaration judgment action); *Cont'l Cas. Co*., 127 F. Supp. 2d at 870 (finding company's subsequent insurer to be "a necessary party under Rule 19(a)" in declaratory judgment action brought against company by its predecessor insurer).

ETP warned AmTrust that it had failed to join ETP's successor insurers—QBE Insurance Corporation and Starr Indemnity & Liability Company—as necessary and indispensable parties at the inception of this case, in its still pending motion to dismiss (Doc. 16 at 9-12; Doc. 16-5 at ¶ 3). This Court's Uniform Scheduling Order then gave AmTrust until December 3, 2012 to add such parties, if it so desired (Doc. 20 at § 4). Nevertheless, AmTrust has made no effort whatsoever to add ETP's subsequent insurers as parties.

AmTrust's only excuse to date for not joining all of ETP's insurers in a single action is

to claim that it is the duty of ETP's succeeding insurers "to intervene" to protect their interests, and not AmTrust's duty to add them as parties (Doc. 19 at 13-14). This entirely misses the mark. The absent insurers have nothing to lose by waiting on the sidelines. It is ETP whose rights stand to be trampled by conflicting factual findings by different courts in the event its relevant insurers are not joined as parties in this action. Therefore, Rule 19 mandates that plaintiff include indispensable parties. Indeed, AmTrust's position reads Rule 19 out of existence.

Not only does AmTrust's argument find no support under Rule 19, *see, e.g., Schlumberger,* 36 F.3d at 1287, it has in fact been rejected by the United States Supreme Court. *See, e.g., Martin v. Wilks*, 490 U.S. 755, 765 (1989) ("Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree. The parties to a lawsuit presumably know better than anyone else the nature and scope of relief sought in the action, and at whose expense such relief might be granted. It makes sense, therefore, to place on them a burden of bringing in additional parties where such a step is indicated, rather than placing on potential additional parties a duty to intervene when they acquire knowledge of the lawsuit."), *superseded by statute on other grounds*, Section 18 of the Civil Rights Act of 1991, codified at 42 U.S.C.2000e-2(n)(1).[1]

ETP is entitled to summary judgment with respect to all of AmTrust's claims because AmTrust has failed to join all necessary and indispensible parties with competing interests in the resolution of the common fact questions relevant to coverage, starting with the commonly relevant factual determination of when exactly, "[i]n or around February 2011" (Doc. 1-1 at

---

[1] The problem is not simply that AmTrust has failed to add ETP's subsequent insurers as parties. The problem is also that at least one of ETP's subsequent insurers—Starr Indemnity & Liability Company—cannot be added here without defeating the diversity of the parties (*see* Doc. 16 at 9-10 at Exs. B-F).

¶ 21), the pond cover supposedly failed.

## II. ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT IS DUE TO BE GRANTED BECAUSE THE ALLEGATIONS OF THE UNDERLYING COMPLAINT TRIGGER AMTRUST'S DUTY TO DEFEND ETP IN THE UNDERLYING LAWSUIT

Even if there was not a fatal indispensable party defect here, partial summary judgment in ETP's favor would still be warranted as to AmTrust's plea for a declaration that it has no duty to continue defending ETP in the underlying state lawsuit. The complaint from the underlying lawsuit sets forth allegations that can reasonably be interpreted to allege an occurrence within the scope of coverage of AmTrust's policies. At the very least, the underlying complaint sets forth alternative allegations, some of which undeniably present a covered claim under AmTrust's policies. In other words, the underlying complaint certainly does not contain factual allegations that would necessarily preclude coverage altogether. There is of course no genuine dispute of material fact over what allegations the underlying complaint expressly states, and no dispute as to what the written terms of AmTrust's policies are. Since a reasonable construction of the underlying complaint identifies at least some claims that potentially constitute covered claims under the policies, AmTrust's duty to defend ETP in the underlying case is triggered as a matter of law.

### A.   Overview Of An Insurer's Duty To Defend Its Insured

The legal standard that governs AmTrust's "no duty to defend" claim is well-established. "An insurance company's duty to defend its insured from suit is determined by the language of the insurance policy and by the allegations in the complaint filed against the insured." *Allstate Indemn. Co. v. Lewis*, 985 F. Supp. 1341, 1344 (M.D. Ala. 1997); *accord Canal Ins. Co. v. Cook*, 564 F. Supp. 2d 1322, 1327 (M.D. Ala. 2008) ("To determine an insurer's duty to defend its insured, a court looks to the language of the insurance policy and the allegations in the complaint

11

filed against the insured."); *State Farm Fire & Cas. Co. v. Lacks*, 840 F. Supp. 2d 1292, 1296 (M.D. Ala. 2012) (an "insurer's duty to defend is determined by the allegations levied against the insured").

Accordingly, to determine whether an insurer owes its insured a duty of defend, a "court merely compares the underlying complaint to the policy." *Pharmacists Mut. Ins. Co. v. Godbee Med. Distrib., Inc.*, 733 F. Supp. 2d 1281, 1285 n.2 (M.D. Ala. 2010). "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." *Auto-Owners Ins. Co. v. Toole*, 947 F. Supp. 1557, 1561 (M.D. Ala. 1996); *accord State Farm Fire & Cas. Co.,* 840 F. Supp. 2d at 1296 ("An insurer cannot refuse to defend a suit because the claim asserted against the insured will not succeed due to the absence of a legal or factual basis for the claimant's judgment") (quoting 14 COUCH ON INSURANCE § 200:8 (3d ed)). This is true even where the underlying "complaint alleges both acts covered under the policy and acts not covered." *Id.*, 840 F. Supp. 2d at 1296 (quoting *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1010 (Ala. 2005)).

"In making th[is] examination the court is not bound by the formal or legalistic characterization of the claim in the pleadings; the court should focus instead upon the facts alleged in support of the claim. *If the facts alleged could reasonably support a legal theory of recovery that is an insured risk under the policy, the insurer has a duty to defend the claim*." *American Safety Indem. Co. v. T.H. Taylor, Inc.*, No. 11–12245, 2013 WL 978804, at *2 (11th Cir. Mar. 14, 2013) (emphasis added) (citing *Hartford Cas. Ins. Co.*, 928 So. 2d at 1012); *accord Perkins v. Hartford Ins. Grp.*, 932 F.2d 1392, 1395 (11th Cir. 1991) ("any 'doubt as to whether or not the complaint against the insured alleges a liability under the policy . . . must be resolved

in the insured's favor.'") (quoting 14 COUCH ON INSURANCE 2D (Rev. ed.) § 51.49 (1982)).[2]

And if the underlying complaint does reasonably support a legal theory of recovery that is an insured risk, determination of the duty to defend is limited to a "four corners" inquiry.  In other words, if "the allegations of the [underlying] complaint do allege a covered accident or occurrence," an insurer may not rely on "evidence outside th[ose] allegations to disestablish the duty to defend."  *State Farm Fire & Cas. Co.,* 840 F. Supp. 2d at 1296 (quotation omitted, bracketed text added); a*ccord Pharmacists Mut. Ins. Co.*, 733 F. Supp. 2d at 1285 n.1 ("Although the court may look beyond the pleadings in order to ***establish*** the duty to defend when the complaint implies there is no coverage, the Alabama Supreme Court has never held that, even though the allegations of the complaint do allege a covered accident or occurrence, the courts may consider evidence outside the allegations to ***disestablish*** the duty to defend.") (quotation and citations omitted; emphasis added).  This is because a "court cannot speculate as to the nature or merit of the claims; it may only look to the factual allegations of the underlying complaint.  If the facts alleged [in the underlying complaint] show any basis for imposing liability upon the insured that falls within policy coverage, the insurer has a duty to defend."  *Lime Tree Village Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co*., 980 F.2d 1402, 1406 (11th Cir. 1993) (bracketed text added); *accord Pennsylvania Nat'l. Mut. Cas. Ins. Co. v. Cochrane Roofing & Metal Co., Inc*., No. 2:11–cv–0124–LSC, 2012 WL 6043078, at *9 (N.D. Ala. Dec. 3, 2012) ("An insurer is only relieved from its duty to defend when ***both*** the complaint against the insured fails to allege a

---

[2] *See also Tanner v. State Farm Fire & Cas. Co*., 874 So. 2d 1058, 1065 (Ala. 2003) ("If the allegedly injured person's complaint against the insured alleges a covered accident or occurrence, then the insurer owes the duty to defend even though the evidence may eventually prove that the gravamen of the complaint was not a covered accident or occurrence.  If the complaint against the insured does not, on its face, allege a covered accident or occurrence, but the evidence proves one, then the insurer likewise owes the duty to defend.  The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence. .") (citations omitted).

covered accident or occurrence ***and*** the evidence in the litigation between insurer and insured fails to prove a covered accident or occurrence.") (emphasis added; quotations omitted).

**B.     The Underlying Complaint Alleges Facts That Reasonably Support A Legal Theory Of Recovery That Is An Insured Risk Under AmTrust's Policies**

"Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, while the insurer bears the burden of proving the applicability of any policy exclusion." *Allstate Indemn. Co*., 985 F. Supp. at 1345.

The complaint from the underlying state lawsuit alleges that ETP was hired by Southeastern Cheese to install a pond cover in 2008; that the pond cover "suffered a catastrophic failure" sometime "[i]n or around February 2011" (Doc. 1-1 at ¶ 21); damaging not only itself but also the entirety of Southeastern Cheese's waste water treatment system, causing "substantial economic damage[s]" to Southeastern Cheese in the form of repair costs and "lost profits and sales" (*id.* at ¶ 31).

These allegations "reasonably support a legal theory of recovery that is an insured risk under" each of AmTrust's policies. *American Safety Indem. Co*., 2013 WL 978804, at *2. AmTrust's CGL Policy obligates AmTrust "to defend [ETP] against any 'suit'" seeking "property damage" caused by an "occurrence" with its policy period, subject to the CGL Policy's coverage limits (Doc. 1-2 at 10 (bracketed text added)).  AmTrust's Umbrella Policy affords ETP similar protections, obligating AmTrust "to defend [ETP] against any 'suit' seeking damages for . . . 'property damage' when the [CGL Policy] does not provide coverage or the limits of [its coverage] have been exhausted," provided the alleged damages are "caused by an 'occurrence,'" that takes place "during the policy period." (Doc. 1-3 at 8 (bracketed text added)).

The policy periods of both the CGL Policy and Umbrella Policy ran from February 8, 2010 through February 8, 2011 (Doc. 1-2 at 7; Doc. 1-3 at 6), and both policies define the terms

14

"suit," "property damage," and "occurrence" in the same manner.  A "suit" is defined as "a civil proceeding in which damages because of . . . 'property damage' . . . to which this insurance applies are alleged" (Doc. 1-2 at 24; Doc. 1-3 at 23).  The phrase "property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property," as well as "[l]oss of use of tangible property that is not physically injured" (Doc. 1-2 at 23-24; Doc. 1-3 at 23).  An "occurrence" is defined by both policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" (Doc. 1-2 at 23; Doc. 1-3 at 22).

There is no dispute that Southeastern Cheese's underlying lawsuit constitutes a "suit" within the meaning of both AmTrust's CGL and Umbrella Policies.  There also is no genuine dispute that the underlying lawsuit is seeking damages "for 'property damage:'" after all, the underlying lawsuit seeks damages for alleged physical injuries to Southeastern Cheese's physical property, as well as the company's alleged loss of use of its tangible property.  Similarly, there is no genuine dispute that the alleged "catastrophic failure" of the pond cover constitutes an accident, and that an accident is an "occurrence" under both policies.  Moreover, because the policy periods of both policies extend through February 8, 2011, and the underlying complaint alleges that the "catastrophic failure" occurred sometime "[i]n or around February 2011" (Doc. 1-1 at ¶ 21), the underlying complaint alleges facts that "reasonably support a legal theory of recovery that is an insured risk under" AmTrust's policies, thereby triggering AmTrust's duty to defend ETP in the underlying litigation.  *American Safety Indem. Co*., 2013 WL 978804, at *2; *accord Perkins*, 932 F.2d at 1395; *Lime Tree Village Cmty. Club Ass'n, Inc.*, 980 F.2d at 1406; *Pennsylvania Nat'l. Mut. Cas. Ins. Co.*, 2012 WL 6043078, at *9.

### C.     AmTrust Cannot Avoid Its Obligation to Defend ETP By Challenging The Underlying Complaint's Allegations

Although the underlying complaint alleges facts that reasonably support a legal theory of recovery that constitutes an insured risk under AmTrust's policies, AmTrust nevertheless contends that it owes ETP no defense because AmTrust claims evidence extrinsic to the underlying complaint itself establishes that "[t]he 'sudden and catastrophic' event related to the ETP Cover, which is the subject of the Southeastern Cheese Complaint, occurred on or about the week of February 17, 2011, approximately 10 days after the coverage extended under the AmTrust policies had expired" (Doc. 1 at ¶ 30; *accord id.* at ¶ 40(a) (alleging that it owes ETP no defense because its policies were "no longer in effect when the 'catastrophic event' took place").

In other words, AmTrust is basing its "no duty to defend" claim on its ***own*** allegation that the pond cover supposedly failed "on or about the week of February 17, 2011" (Doc. 1 at ¶ 30), even though its allegation varies from the allegations of the underlying complaint.  The underlying complaint alleges only that the pond cover failed sometime "[i]n or around February 2011" (Doc. 1-1 at ¶ 21), and AmTrust's policies afforded ETP coverage through at least February 8, 2011.  Even a date of occurrence of January 2011 would fit the allegation "in or around February 2011."  So the actual allegation of the underlying complaint is plainly capable of a construction which would afford coverage.  AmTrust, however, is trying to avoid its duty to provide ETP a defense by changing or contradicting the allegations of the underlying complaint, even though the underlying complaint on its face plainly alleges facts sufficient to trigger AmTrust's duty to defend.  As a matter of law, AmTrust cannot do this: any effort by AmTrust to escape its duty to defend must rely solely on the four corners of the underlying complaint and

its own policies,[3] not upon its own unsupported challenges or embellishments to the factual allegations of the underlying complaint.[4]   *Accord American Safety Indem. Co.*, 2013 WL 978804, at *2; *Perkins*, 932 F.2d at 1395.

**D.**   **AmTrust Also Cannot Avoid Its Obligation to Defend ETP By Ignoring The Scope Of The Underlying Complaint's Allegations**

In its complaint, AmTrust alternatively contends that it has no duty to continue defending ETP in the underlying lawsuit because three of its policies' exclusions—the "your product," "your work," and "total pollution" exclusions (Doc. 1 at ¶ 40)—preclude coverage outright.  But none of these exclusions afford AmTrust the right to discontinue defending ETP, let alone preclude coverage altogether,  In making these claims, AmTrust is again ignoring the underlying complaint's actual allegations.

**1.**   ***The policies' "your product" exclusions do not preclude all coverage***

AmTrust contends that its policies do not provide coverage for "[d]amages 'arising out of 'your product' or any part of it'" (Doc. 1 at ¶ 22).  AmTrust uses this argument to claim that it owes ETP *no defense whatsoever* in the underlying lawsuit (Doc. 1 at ¶ 43 ("AmTrust requests this Court . . . specify and determine that AmTrust has no obligation or duty under the AmTrust insurance policies to defend or indemnify ETP for any of the claims or damages asserted by Southeastern Cheese.")).  But the "your product" exclusions of AmTrust's policies do not afford AmTrust ground for denying ETP any defense in the underlying case.

---

[3] *See, e.g., Western World Ins. Co. v. Resurrection Catholic Mission of the South, Inc.,* No. 2:05cv327-ID (WO), 2006 WL 2079990, at *5 (M.D. Ala. July 25, 2006) ("An insurance company's duty to defend its insured is determined primarily by the allegations in the complaint giving rise to the action against the insured.  If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured.") (quotation and citations omitted).

[4] *State Farm*, 840 F. Supp. 2d at 1296 ("[T]he Court has never held that, even though the allegations of the complaint do allege a covered accident or occurrence, the court may consider evidence outside the allegations to disestablish the duty to defend."); *Allstate Indemn. Co.*, 985 F. Supp. at 1348 (same).

It is not necessary for this Court to determine the precise meaning and scope of this exclusion nor its overall enforceability at this time, because as shown below, indemnity determinations are not yet ripe.  For purposes of the duty to defend, it is sufficient to observe that at most, the "your product" exclusions of AmTrust's policies purport to preclude coverage only for "'property damage' to 'your product' arising out of it or any part of it" (Doc 1-2 at 14; *see also* Doc. 1-3 at 11).  For purposes of applying that awkward language, both policies define the phrase "your product" in relevant part as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (a) You . . ." (Doc. 1-2 at 24; *see also* Doc. 1-3 at 24).  Therefore, this much is clear:  at best, "[t]he effect of [this] exclusion is to exempt coverage for damage to the ***product*** of an insured," but ***not*** to preclude coverage for the damages caused to other property by the product.  BIBB ALLEN, ALABAMA LIABILITY INSURANCE HANDBOOK § 10-6 at 237 (1996) (emphasis in original, bracketed text added); *see also U.S. Fid. & Guar. Co. v. Andalusia Ready Mix, Inc.,* 436 So. 2d 868, 870 (Ala. 1983) (concluding that the "your product" exclusion does not preclude coverage for damages caused to "other property than the insured's product"); *Fitness Equip. Co., Inc. v. Penn. Gen. Ins. Co.*, 493 So. 2d 1337, 1341-42 (Ala. 1986) (same).

The complaint from the underlying lawsuit alleges, among other things, that the supposed failure of the pond cover "severely impair[ed] the function of [Southeastern Cheese's entire] waste water treatment system," resulting in "substantial economic damage[s]" in the form of repair costs and "lost profits and sales" (Doc. 1-1 at ¶¶ 22, 31). Southeastern Cheese thus seeks damages for injuries the pond cover's supposed failure allegedly caused to the company's entire waste treatment system, along with damages to its business operations supposedly caused by its loss of use of that system.  AmTrust has failed to produce any evidence to show that the damages

18

claimed by Southeastern Cheese are limited to the cover itself—*i.e.,* to just ETP's product. Accordingly, even assuming *arguendo* that the "your product" exclusion might apply to prevent ***indemnity*** for that portion of  damages attributable to the value of the pond cover itself,  it would plainly not preclude ETP's right ***to a defense*** against the entirety of Southeastern Cheese's legal claims, which plainly seek damages for Southeastern Cheese's other claimed injuries as well. *U.S. Fid. & Gaur.,* 436 So. 2d at 870-72  (affirming judgment finding insurer obligated to defend and indemnify its insured against claims that its grout product necessitated "extensive repairing and remodeling of [its client's] Waste Water Treatment Plant").  Therefore, the policies' "your product" exclusions afford no escape for AmTrust from its duty to continue defending ETP in the underlying lawsuit.  *Cf. Acceptance Ins. Co. v. Brown,* 832 So. 2d 1, 14 (Ala. 2001).

Because the scope of damages sought under each claim  in the underlying complaint go well beyond damage just to ETP's product—*i.e.,* the pond cover, the "your product" exclusions of AmTrust's policies cannot, as a matter of law, afford AmTrust grounds upon which to deny ETP a defense in the underlying lawsuit.

### 2.        *The policies' "your work" exclusions also do not preclude coverage*

Nor can AmTrust avoid its duty to defend ETP by relying on the "your work" exclusions of its policies.  Again, while their precise meaning and enforceability for purposes of indemnity is not yet ripe, the "your work" exclusions of its policies only purport to preclude coverage for "'[p]roperty damage' ***to 'your work'*** arising out of it or any part of it and included in the 'products-completed operations hazard,'" but then reinstate coverage "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor" (Doc. 1-2 at 14 (emphasis added); *see also* Doc. 1-3 at 11). Therefore, at most, the "your work" exclusions, like the "your product" exclusions, only

preclude coverage for damages to ETP's work itself, but do not preclude coverage for any damages ETP's work may be found in the underlying case to have caused to Southeastern Cheese's other property.  *See, e.g., Shane Traylor Cabinetmaker, LLC v. American Res. Ins. Co., Inc.*, — So. 3d —, 2013 WL 1858782, at *4 (Ala. May 3, 2013); *Town & Country Prop., LLC v. Amerisure Ins. Co.,* 111 So. 3d 699, 706 (Ala. 2011); *Cincinnati Ins. Co. v. Amerisure Ins. Co.,* No. 11–0271–WS–M, 2012 WL 4033724, at *6-8 (S.D. Ala. Sept. 12, 2012).  As just noted, each claim of Southeastern Cheese's underlying complaint seeks damages of many other kinds. Therefore, ETP cannot avoid its duty to defend those claims.

Moreover, the underlying complaint alleges that the pond cover failed for a variety of alternative reasons, including improper installation of the cover or because of a manufacturing defect in the material provided by ETP's material suppliers (Doc. 1-1 at ¶ 24).  Installation was not ETP's responsibility under its contract with Southeastern Cheese, and accordingly any improper installation of the cover was not part of ETP's "work" (Doc. 16-1 at 3 (¶ 2.03)).  Any manufacturing defect in the material used to build the pond cover was also not ETP's "work," but would instead be the work of its material subcontractor (*id.* at 4 (¶ 6)) for which coverage is reinstated by the "your work" exclusions of AmTrust's policies (Doc. 1-2 at 14; *see also* Doc. 1-3 at 11).  Moreover, the underlying complaint asserts damage claims that go far beyond any injuries associated with the cover itself.  The simple fact is that the underlying complaint pleads alternate theories of causation and injury, many of which are clearly not even arguably barred by the "your work" exclusions of AmTrust's policies.  A reasonable construction of the complaint therefore triggers the duty to defend, and precludes AmTrust from raising issues of extrinsic fact on the issue.  *Pharmacists Mut. Ins. Co.*, 733 F. Supp. 2d at 1285 n.1).

Because the underlying complaint includes allegations capable of a construction that

triggers coverage, there is no genuine issue of material fact to contradict AmTrust's duty to—as a matter of law—continue defending ETP in the underlying lawsuit.  *See, e.g., American Safety Indem. Co.*, 2013 WL 978804, at \*2; *Perkins*, 932 F.2d at 1395.  Therefore, summary judgment in ETP's favor is appropriate.

### *3.*   *The policies' "total pollution" exclusions do not preclude coverage*

Summary judgment in ETP's favor is also appropriate because the "total pollution" exclusions of AmTrust's  policies do not negate AmTrust's duty to defend ETP in the underlying case, given the actual allegations contained within the four corners of the complaint.  Again, for purposes of determining the duty to defend, it is not necessary to do any more than observe that the policies' "total pollution" exclusions only purport to preclude coverage for bodily injury and property damage "which would not have occurred in whole or in part ***but for*** the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'" (Doc. 1-2 at 25 (emphasis added); *see also* Doc. 1-3 at 25).  But the underlying complaint details an array of alleged injuries and damages caused by the pond cover's supposed failure, most of which are not even arguably pollution-related, much less pollution-dependent.  For example, Southeastern Cheese's underlying complaint specifically asserts that it was under a pre-existing legal and contractual obligation by virtue of an agreement with ADEM to maintain a system meeting certain specified criteria, and that  "[a]s a result of the [pond c]over's failure," the "function of [its] waste water treatment system" was "severely impair[ed]" and "has not functioned," leading to "damage and loss by the actions necessary to remedy the problem" as well as "loss of profits" (Doc. 1-1 at ¶¶ 22-23, 25-26; *cf.* Doc. 1-1 at ¶¶ 16, 31).  The cause of these alleged injuries—and their associated damages—are independent of any actual or threatened "improper[] release[]" of pollutants into the Uniontown water system that may have occurred (Doc. 1 at ¶¶  36-37).  As

such, the underlying complaint—reasonably construed—alleges property damage that occurred

irrespective of, ***and not because of***, any alleged pollutant discharge into the city's water system.

Therefore, the total pollution exclusion contained in AmTrust's policies provides no basis for

AmTrust to discontinue a defense of ETP in the underlying lawsuit.  *See, e.g., American Safety*

*Indem. Co.*, 2013 WL 978804, at *2; *Perkins*, 932 F.2d at 1395.

### III.   IF AMTRUST'S "NO DUTY TO INDEMNIFY" CLAIM IS NOT DISMISSED FOR AMTRUST'S FAILURE TO JOIN INDISPENSABLE PARTIES, THEN THE CLAIM SHOULD BE DISMISSED OR STAYED BECAUSE IT PRESENTS ISSUES NOT PRESENTLY RIPE FOR ADJUDICATION

In the event the Court does not grant ETP summary judgment as to all of AmTrust's

claims for AmTrust's failure to join indispensable parties, consideration— let alone resolution—

of AmTrust's remaining claim for a "no duty to indemnify" declaration would be premature.

This is because AmTrust's "no duty to indemnify" claim is at this point "not sufficiently ripe to

present a 'case' or 'controversy.'" *The Travelers Home and Marine Ins. Co. v. Jones,* No. 1:12-

cv-00307-MHT-TFM, slip op. at 2 (M.D. Ala. June 7, 2013) (citation omitted, a true and correct

copy of which is attached as **Exhibit "B"**).  Southeastern Cheese's underlying state lawsuit

against ETP is an ongoing proceeding that remains to be adjudicated or resolved.  Until the state

court resolves the factual and legal issues in the underlying case (including, without limitation,

ETP's potential liability), "the duty to indemnify is an abstract, academic issue which presents

'nice and intriguing questions which today may readily be imagined, but may never in fact come

to pass.'"  *Colony Ins. Co. v. Floyd's Prof. Tree Serv.,* No. 3:07-cv-1044-TFM, 2008 WL

2705123, at *2 (M.D. Ala. July 9, 2008) (quoting *American Fid. & Cas. Co. v. Penn.*

*Threshermen & Farmers' Mut. Cas. Ins. Co*., 280 F.2d 453, 461 (5th Cir. 1960)); *accord Canal*

*Ins. Co. v. Cook,* 564 F. Supp. 2d 1322, 1325 (M.D. Ala. 2008) (noting that the "determination as

to indemnification is premature" in a federal declaratory judgment action brought to resolve an

insurer's coverage obligations where the issue of the insured's liability has not yet been determined in the underlying state action brought against it); *Penn. Nat'l. Mut. Cas. Ins. Co. v. King,* No. 11–0577–WS–C, 2012 WL 280656, at *5 (S.D. Ala. Jan. 30, 2012) ("Case law is legion for the proposition that an insurer's duty to indemnify is not ripe for adjudication unless and until the insured or putative insured has been held liable in the underlying action.").  ETP is therefore entitled to summary judgment dismissing AmTrust's "no duty to indemnify" claim without prejudice or, alternatively, the claim should be stayed pending resolution of the underlying lawsuit.

<u>CONCLUSION</u>

For at least the foregoing reasons, ETP is entitled to either complete summary judgment (thereby granting judgment in its favor as to all of AmTrust's claims for AmTrust's failure to join indispensible parties) or, alternatively, partial summary judgment as AmTrust's "no duty to defend" claim is due to be dismissed.  AmTrust's "no duty to indemnify" claim is likewise due to be dismissed, or in the alternative stayed, pending resolution of the underlying litigation.

No amount of additional discovery is necessary on any of these grounds. The time for AmTrust to add parties has passed, and AmTrust's duty to defend ETP must be "determined by the language of the insurance polic[ies] and by the allegations in the complaint filed against" ETP alone.  *See, e.g., Allstate Indemn. Co.*, 985 F. Supp. at 1344; *Auto-Owners Ins. Co.*, 947 F. Supp. at 1561; *Pharmacists Mut. Ins. Co.*, 733 F. Supp. 2d at 1285 n.1 (insurer cannot rely on "evidence outside the allegations to disestablish the duty to defend.").  Therefore, judgment as a matter of law as requested herein is appropriate.

*s/ Robert J. Campbell*

Michael R. Pennington
mpennington@babc.com
Robert J. Campbell
rjcampbell@babc.com
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone:     (205) 521-8000
Facsimile:     (205) 521-8800

*Attorneys for Defendant*
*Engineered Textile Products, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 19th day of July 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send an electronic notification of such filing to the following counsel of record:

Jeff Friedman
Lee Patterson
FRIEDMAN, DAZZIO, ZULANAS & BOWLING, P.C.
3800 Corporate Woods Drive
Birmingham, AL 35242
Telephone:     (205) 278-7000
Facsimile:     (205) 278-7001
jfriedman@friedmanleak.com
lpatterson@friedmanleak.com

   *Counsel for Plaintiff,*
   *AmTrust Insurance Company of Kansas, Inc.*


J. Parker Miller
BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103
Telephone:     (334) 269-2343
Facsimile:     (334) 954-7555
parker.miller@beasleyallen.com

   *Counsel for Defendant,*
   *Southeastern Cheese Corporation*


   *s/ Robert J. Campbell*
   OF COUNSEL